# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **RAYTHEON COMPANY,** | )<br>) |
| **Plaintiff,** | )<br>) |
| v. | )<br>) |
| | )    Case No. 18-2402-CM-GEB |
| **NCR CORPORATION, CECO, INC.** and | ) |
| **MAURICE J. EDWARDS, III as Trustee** | ) |
| of the **MAURICE J. EDWARDS, JR.** | ) |
| **GENERATION SKIPPING TRUST,** | )<br>) |
| **Defendants.** | )<br>) |

## MEMORANDUM AND ORDER

Plaintiff Raytheon Company brings this action pursuant to the Resource Conservation and Recovery Act ("RCRA"), seeking injunctive and declaratory relief against defendants NCR Corporation ("NCR"); CECO, Inc. ("CECO"); and Maurice J. Edwards, III, as Trustee of the Maurice J. Edwards, Jr. Generation Skipping Trust ("Trust"). 42 U.S.C. § 6972(a)(1)(B). The RCRA authorizes private citizens to bring suit in federal court against any person "who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment . . . ."

Plaintiff claims that defendants engaged in industrial activities at a facility in Wichita, Kansas ("the Site"), that caused environmental contamination that may present an imminent and substantial endangerment to health and the environment. Plaintiff asks the court to compel defendants to "complete and pay for the necessary costs of environmental response, investigation, remediation, cleanup, and monitoring of the contamination . . . ." (Doc. 1, at 1.) The case is now before the court on defendants' motions to dismiss (Docs. 9 and 12). The court first addresses Doc. 12, where

-1-

defendants CECO and the Trust ask this court to abstain from asserting jurisdiction over this case on the basis of primary jurisdiction and *Burford* abstention. *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

## **Factual Background**

The following facts are taken from plaintiff's complaint and public records cited by the parties. Defendant CECO and the Trust bring their motion pursuant to Fed. R. Civ. P. 12(b)(6). There is some authority for considering materials outside the pleadings in deciding whether to dismiss based on abstention and primary jurisdiction grounds. *See*, *e.g., Sierra Club v. Chesapeake Operating, LLC*, 248 F. Supp. 3d 1194, 1199 (W.D. Okla. 2017) (citing cases for the proposition that the court may consider materials outside the pleadings, but notably in this case, defendants sought to dismiss the plaintiff's complaint pursuant to both Rule 12(b)(6) and 12(b)(1)). Nevertheless, because defendants here only moved to dismiss under Rule 12(b)(6), the court will limit the facts it considers to those in the complaint and in public records submitted by the parties and pertinent to plaintiff's claims.

The following is a brief timeline of events relevant to this case. The court does not recount in detail plaintiff's allegations supporting why plaintiff believes other parties are responsible for contamination at the Site. For purposes of this decision, it is only important to understand that plaintiff wants this court to declare others responsible for the contamination and any remediation; the reasons why are not critical here.

- 1962–69: Standard Precision, Inc. manufactured business machines and produced and refurbished precision aircraft instruments at the Site. The corporation was dissolved in 1965 and "Standard Precision" later became a corporate division of its former parent company, Electronic Communications, Inc. ("ECI"). In 1968, NCR acquired a controlling interest in ECI.

- 1962–77: NCR and its predecessors leased the Site and conducted manufacturing operations that contaminated soil and groundwater at the Site. NCR absorbed the Standard Precision Division in 1972.

- 1954–62 and 1977–present: CECO and the Trust and their predecessors conducted heavy tool and die manufacturing at the Site. This also caused contamination of the Site.

- 1994: During an investigation on a neighboring property, a plume of volatile organic compounds was found at the Site. Since that time, the Kansas Department of Health and Environment ("KDHE") has conducted several investigations at the site and has identified various chemicals of concern at the Site. The United States Environmental Protection Agency ("EPA"), defendant NCR, and defendant CECO have also identified various chemicals of concern at the site.

- May 1, 2006: KDHE reached a settlement with CECO and the Trust, resolving liability relating to the Site for those entities.

- December 2017: KDHE issued an administrative order to plaintiff and NCR, requiring investigation and remediation of contamination at the Site, as well as reimbursement of KDHE's past costs.

- NCR has refused to comply with KDHE's order. CECO and the Trust are not named as parties to KDHE's order. Raytheon claims that it did not cause or contribute to contamination at the Site.

- The KDHE administrative action is currently stayed because plaintiff notified the parties that it was filing the instant action.

## **Discussion**

The doctrine of primary jurisdiction affords the court discretion to refer a matter to an appropriate administrative agency instead of hearing it in federal court. *Williams Pipe Line Co. v.*

*Empire Gas Corp.*, 76 F.3d 1491, 1496 (10th Cir. 1996). "The doctrine of primary jurisdiction . . . is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63 (1956). Under this doctrine, a court may allow an administrative agency to determine matters which extend "beyond the 'conventional experiences of judges' or 'falling within the realm of administrative discretion.'" *Williams Pipe Line*, 76 F.3d at 1496. But a court should be cautious in invoking the doctrine—not indiscriminately referring all cases where agencies specialize. *Wilson v. Amoco Corp.*, 989 F. Supp. 1159, 1170 (D. Wyo. 1998) (noting that primary jurisdiction "does not mandate blind deference in all circumstances involving issues of agency expertise") (citation omitted); *College Park Holdings, LLC v. RaceTrac Petroleum, Inc.*, 239 F. Supp. 2d 1322, 1328 (N.D. Ga. 2002) ("[C]ourts should be reluctant to invoke the doctrine of primary jurisdiction, which often, but not always, results in added expense and delay to the litigants.") (citation omitted).

The court considers several factors when evaluating whether to assert jurisdiction: (1) whether the issue is within the conventional experience of judges; (2) whether the defendants could be subjected to conflicting orders from the court and the administrative agency; (3) whether agency proceedings have been initiated; (4) whether the agency has demonstrated diligence in resolving the issue; and (5) whether the plaintiff seeks injunctive relief or another type of relief. *Davies v. Nat'l Coop. Refinery Ass'n*, 963 F. Supp. 990, 997–98 (D. Kan. 1997). The same considerations are relevant in evaluating whether *Burford* abstention is appropriate. *College Park Holdings*, 239 F. Supp. 2d at 1328 ("In the context of cases involving state administrative schemes, the *Burford* abstention and primary jurisdiction doctrines are 'different labels for the same thing.'") (quoting *Boyes v. Shell Oil Prods. Co.*, 199 F.2d 1260, 1265–66 (11th Cir. 2000)).

The first factor either weighs against abstention or is neutral. Likely, this case will involve technical environmental matters; scientific matters that typically are the province of engineers and geologists. While the court does not consider issues of this nature regularly, the court is confident that it could address them—although KDHE has more experience in this area. *See Baykeeper v. NL Indus.*, 660 F.3d 686, 691 (3d Cir. 2011); *PennEnvironment v. PPG Indus.*, 964 F. Supp. 2d 429, 453 (W.D. Pa. 2013) ("While PADEP has expertise in environmental matters, this Court is competent to decide the case, as evidenced by Congress's enactment of environmental statutes authorizing citizen suits in federal court, and to grant Plaintiffs' requested forms of relief."). But the central dispute in this case—at least initially—is who bears the responsibility for the contamination. Answering this question likely involves questions of corporate and successor liability. Arguably, the court is in a better position to decide these issues than KDHE. But, significantly, KDHE appears to have already decided who is at fault and responsible for clean-up. This fact leads the court to the second factor: the potential of conflicting orders.

The second factor concerns the court. KDHE brought the administrative action against plaintiff and defendant NCR. The complaint indicates that "In December 2017, [KDHE] issued an administrative order . . . to both NCR and Raytheon, requiring investigation and remediation of contamination at the Site and reimbursement of KDHE's past costs." (Doc. 1, at 4.) Plaintiff claims, "Plaintiff is not seeking an alternative or different remedy than any KDHE has proposed." (Doc. 15, at 8.) The court disagrees. KDHE has inherently, if not overtly, decided that plaintiff and defendant NCR are responsible for addressing the contamination. Although KDHE has not yet devised a clean-up plan, plaintiff does not believe it is responsible for any clean-up. Plaintiff wants this court to declare that plaintiff is not responsible and require others to engage in remediation. And an order saying that plaintiff need not participate in remediation and need not pay for it will necessarily conflict

with KDHE's order requiring plaintiff (and NCR) to investigate and remediate. This factor weighs in favor of abstention.

The third factor—whether agency action has already been initiated—also weighs in favor of abstention. *See Friends of Santa Fe Cnty. v. LAC Minerals, Inc.*, 892 F. Supp. 1333, 1350 (D.N.M. 1995) ("It is axiomatic that the advisability of invoking primary jurisdiction is greatest where the issue is already before the agency.") (citation omitted). KDHE has already begun an agency action. The action is presently stayed pursuant to agreement of the parties, but the court does not believe that KDHE's agreement to stay the action indicates that federal court is unequivocally the correct place to resolve this dispute. The court declines to make any inferences from KDHE's decision to stay the action pursuant to the parties' agreement.

Fourth, KDHE has not allowed the issue to languish. While the contamination issue at the site has persisted for over twenty years, it appears that KDHE has been reasonably diligent in pursuing remediation. It investigated the site for years before reaching a settlement with CECO and the Trust. It then referred the site to the EPA, which conducted its own removal action. Now, KDHE has stayed its administrative action, but the court does not fault the agency for adopting an action on which the parties agreed. In any event, KDHE requested periodic conference calls to monitor the status of this case. This shows adequate diligence.

Finally, the fifth factor weighs in favor of abstention. Plaintiff seeks injunctive and declaratory relief here. This is precisely the type of suit in which courts defer to administrative agencies. *See Davies*, 963 F. Supp. at 998. Because plaintiff is using this case to collaterally attack KDHE's decision not to hold CECO and the Trust responsible for the contamination, the court determines that this court's exercise of jurisdiction would be disruptive of the state's efforts to handle a matter of

public concern. There is significant value in the state of Kansas handling environmental contamination uniformly.

After weighing the above factors, the court determines that KDHE is the proper entity to determine what to do about the contamination. KDHE has been investigating the site since 1994. It has an administrative action pending. The court acknowledges that Congress intended to give plaintiffs a private right of action under RCRA and that courts have a duty to decide those cases when appropriate. But there are times when court intervention is not appropriate, and this is one of those times. Plaintiff has attempted to use this case to collaterally attack unfavorable treatment by KDHE. This court will not interfere with the agency's actions. At a later date, administrative review under the Kansas Administrative Procedure Act may be proper. But now is not the time.

To the extent that *Burford* abstention requires any considerations other than those enumerated above, the court also finds that abstention is appropriate under *Burford*. This doctrine holds:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989) (citation omitted). The same reasons enumerated above for primary jurisdiction abstention also support *Burford* abstention, so that the state of Kansas may apply a coherent policy with respect to environmental hazards that are of substantial public concern.

Because the court finds that it should abstain from hearing this case, the other arguments made by defendants are moot. The court therefore grants the motion to dismiss of defendants CECO and the Trust, and denies the motion of NCR.

**IT IS THEREFORE ORDERED** that the motion to dismiss of defendants CECO and the Trust (Doc. 12) is granted. The court abstains from hearing this action, and the case is dismissed without prejudice against both defendants.

**IT IS FURTHER ORDERED** that the motion to dismiss of defendant NCR (Doc. 9) is denied as moot. The case is closed.

Dated this 26th day of March, 2019, at Kansas City, Kansas.

                                                  **s/ Carlos Murguia**
                                                  **CARLOS MURGUIA**
                                                  **United States District Judge**